# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NS412, LLC and NATURALLY SLIM, INC. | § § § § | |
| v. | § § | CIVIL ACTION NO. 3:18-CV-2363-S |
| CHANTEL RAY FINCH a/k/a CHANTEL RAY | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Chantel Ray Finch's ("Defendant") Motion to Dismiss or, in the Alternative, Transfer Venue [ECF No. 7]. For the reasons stated below, the Court denies the Motion.

### I. BACKGROUND

Plaintiffs NS412 LLC and Naturally Slim, Inc. ("Plaintiffs"), along with their affiliates, provide a behavioral-based nutritional intervention program under the mark NATURALLY SLIM® ("NS Program"). Compl. ¶ 1. The NS Program is a technology-based, modeled behavior program that is designed and administered by experienced professionals. *Id.* ¶ 15. The NS Program includes video lessons and digital materials that are available to users online via a secure login. *Id.* ¶ 16.

Plaintiffs own 79 copyright registrations and have 117 pending applications for copyright registrations for the NS Program materials. *Id.* ¶ 18. They also own 14 federal trademark registrations used in connection with the NS Program. *Id.* Plaintiffs and their affiliates require users of the program to agree, both upon registration and prior to viewing each video, that their access to the NS Program is for personal use only and that they will not share the contents with nonusers. *Id.* ¶ 17. A person who desires to participate in the NS Program must create an account. Resp. to Mot. to Dismiss ("Resp.") ¶ 5. When a person registers for the NS Program, he or she is

presented with certain "Legal and Release Forms." *Id.* ¶ 6. That person must agree to each item by clicking a box. *Id.* After clicking all of the boxes and entering an electronic signature, he or she can access a list of program materials. *Id.* ¶ 8. However, before the person can watch a video, he or she is presented with a two-paragraph "Acknowledgement" and must click "Agree" yet again. *Id.*

In August 2018, Plaintiffs received an email from a user of the NS Program. Compl. ¶ 2. That person alerted Plaintiffs to a book titled Waist Away the Chantel Ray Way ("Book") and said the Book was "in many ways very much identical" to the NS Program. *Id.* (emphasis omitted). Soon after, Plaintiffs learned that Defendant, the author and self-publisher of the Book, was a registered user of the NS Program. *Id.* ¶ 3. Defendant became a user of the NS Program on or about September 27, 2017. *Id.* ¶ 19. According to Plaintiffs, Defendant "contractually agreed to the restrictions placed on each [u]ser pertaining to access to and use of the NS Program." *Id.* ¶ 20. Plaintiffs purchased the Book and "realized that it was substantially similar to the NS Program and even used certain of Naturally Slim, Inc.'s federally registered trademarks." *Id.* ¶ 4.

Based on the foregoing allegations, Plaintiffs bring causes of action for breach of contract, fraud in the inducement, copyright infringement, and unfair competition. Defendant moves to dismiss the Complaint, arguing that this Court does not have personal jurisdiction over her. In the alternative, Defendant requests that the Court either dismiss the Complaint for improper venue or transfer the action to the Eastern District of Virginia.

## II. ANALYSIS

### A. *Personal Jurisdiction*

#### i. *Validity of Forum Selection Clause*

Defendant argues that the Court lacks personal jurisdiction over her. The plaintiff bears the burden of making a prima facie showing that a court has personal jurisdiction over a defendant.

2

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). In considering a motion to dismiss pursuant to Rule 12(b)(2), the court must accept the plaintiff's "uncontroverted allegations, and resolve in its favor all conflicts." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citation omitted).

Plaintiffs contend that Defendant is bound by a forum selection clause contained in the NS Program's Terms and Conditions and that the clause "is dispositive of [Defendant's] challenges to personal jurisdiction and venue." Resp. 1; *see also CDx Holdings, Inc. v. Goldenson*, Civ. A. No. 3:12-CV-394-N-BH, 2012 WL 13018985, at *6 (N.D. Tex. Oct. 26, 2012) ("Personal jurisdiction is subject to waiver. A common method of waiver is a contractual forum selection clause." (citation omitted)). Because the forum selection clause, if applicable and enforceable, would foreclose Defendant from challenging personal jurisdiction,[1] the Court will analyze the validity of the clause first. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) ("Because we find the forum selection clause to be dispositive of th[e] question, we need not consider petitioner's constitutional argument as to personal jurisdiction." (citation omitted)).

Contained within the NS Program's Terms and Conditions is the following forum selection clause:

> This Agreement shall be construed in accordance with the laws of the State of Texas, without regard to any conflict of law provisions. Any dispute arising under this Agreement shall be resolved exclusively by the state and federal courts located in Dallas County, Texas.

---

[1] If applicable and enforceable, the forum selection clause would apply to all Plaintiff's claims. *See Valero Energy Corp. v. Wagner & Brown, II*, 777 S.W.2d 564, 566 (Tex. App.—El Paso 1989, pet. denied) ("A dispute arising under or out of a contractual relationship may give rise to both breach of contract and tort claims at the same time since the breach of a duty owed under the contract may involve tortious conduct.") (citation omitted).

3

Resp. 1 (quoting App. in Support of Resp. 21). Plaintiffs contend that this clause provides the Court with personal jurisdiction over Defendant. Defendant argues that she did not assent to be bound by the Terms and Conditions and/or that she did not have notice of the Terms and Conditions.

### a. *Clickwrap Agreements v. Browsewrap Agreements*

The parties devote the bulk of their principal and supplemental briefing to arguing about whether the agreement containing the forum selection clause is a clickwrap agreement or a browsewrap agreement. In reality, it appears to be neither, but rather a hybrid of the two. Moreover, the parties have not identified, and the Court has not found, a single case dealing with the unique situation presented by the facts of this case. However, the caselaw on clickwrap and browsewrap agreements is relevant to the Court's analysis. Accordingly, the Court will briefly review the distinctions between the two types of agreements.

"A 'clickwrap agreement' allows a consumer to assent to the terms of a contract by selecting an 'accept' button on the [website]." *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 904 n.15 (N.D. Tex. 2000) (citation omitted). Browsewrap agreements, by contrast, do not require an express manifestation of assent; rather, "[a] party . . . gives his [or her] assent simply by using the website." *See Sw. Airlines Co. v. BoardFirst, L.L.C.*, Civ. A. No. 3:06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007)) (citing *Pollstar v. Gigmania, Ltd.*, 170 F. Supp. 2d 974, 981 (E.D. Cal. 2000)). A browsewrap agreement typically gives "notice on a website [that] conditions use of the site upon compliance with certain terms and conditions, which may be included on the same page as the notice or accessible via a hyperlink." *Id.* (citations omitted). Whereas courts routinely enforce clickwrap agreements, *see Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 781-83 (N.D. Tex. 2006)

(collecting cases), "the validity of a browsewrap license turns on whether a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." *Sw. Airlines*, 2007 WL 4823761, at *5.

The agreement at issue in this case lacks a "defining feature" of a browsewrap agreement because it required Defendant to click on an "Agree" button before accessing Plaintiffs' videos. *Sw. Airlines Co.*, 2007 WL 4823761, at *4 (citation omitted); Resp. 9 (citing App. in Support of Resp. 25). This button was located below a two-paragraph Acknowledgement that included the following line: "By using or accessing the videos, printed materials, and this website, you agree to the Terms and Conditions, as may be updated from time to time." App. in Supp. of Resp. ¶ 6. Thus, one hallmark of a clickwrap agreement—express assent—is present. However, the agreement also lacks a traditional feature of a clickwrap agreement, because the terms were neither present on the page containing the "Agree" button, nor was their location indicated by a hyperlink. *See, e.g., Bongalis-Royer v. RJ Worldwide, LLC*, Case No. 4:14-CV-330, 2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015) (enforcing clickwrap agreement where "referenced provisions [were] immediately available at the stage of assent" via hyperlink). The phrase "Terms and Conditions" is in the same color and style of font as the surrounding text, and there is no hyperlink. Rather, the Terms and Conditions are accessible via a hyperlink located at the bottom of the NS Program's website's home page, certain sign-up pages, and the "final page," which appears to be a user's individual dashboard. *See* App. in Support of Def.'s Supp. Br. ¶¶ 5, 6, 14, 15. According to Defendant, the Acknowledgment provides no direction or indication as to "what the 'Terms and Conditions' are or where one can locate the 'Terms and Conditions.'" *Id.* ¶ 18. Defendant also contends that "one cannot view the very small 'Terms' link . . . without having to scroll to the bottom of the page." *Id.* ¶ 20.

### b. *Reasonable Notice*

In cases involving agreements that do not clearly fit into either category, "courts have . . . been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (collecting cases). This tendency comports with general contractual principles. *See One Beacon Ins. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) ("[W]hile new commerce on the [i]nternet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." (citation omitted)). Under general principles of contract, "[t]he chief consideration when determining the validity of contractual terms—in contracts with or without a nexus to the internet—is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms." *Id.* at 269. Further, "one is presumed to have read a contract that one signs: A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it . . . ." *Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, Civ. A. No. 3:09-CV-0430-G, 2010 WL 445927, at *3 (N.D. Tex. Feb. 9, 2010) (quoting *In re Cajun Elec. Power Coop., Inc.*, 791 F.2d 353, 359 (5th Cir. 1986)).

Here, the Court finds that Defendant had reasonable notice of the Terms and Conditions containing the forum selection clause. While the Terms and Conditions were not hyperlinked, Defendant concedes that they appeared at the bottom of multiple pages, including the home page and the dashboard page. And, the Acknowledgment states that the user is agreeing to be bound by "Terms and Conditions." This statement informs a user of the NS Program of the consequences of clicking "Agree." The presence of a "Terms" hyperlink at the bottom of the page shows a user

where to click to understand those consequences. As in *One Beacon*, Defendant had access to the Terms and Conditions, which at all relevant times were available on Plaintiffs' website. *See* 648 F.3d at 269. "[N]either the content nor the location of the [T]erms and [C]onditions changed during the relevant time period." *Id.* Further, the Court finds that Plaintiff's website can be "easily navigated," and a reasonable person would have been able to find the Terms and Conditions. *Id.* Thus, like the Fifth Circuit in *One Beacon*, the Court finds that "[a]lthough [Plaintiffs] undoubtedly could have provided clearer directions to the location of the [T]erms and [C]onditions on the website, . . . notice of the [T]erms and [C]onditions was reasonable under the facts of this case." *Id.*

### c. *Consideration*

Finally, the Court finds that there was adequate consideration for Defendant's acceptance of the Terms and Conditions even though Defendant purchased the program before agreeing to the Terms and Conditions. Under Texas law, which governs under the Terms and Conditions, "whatever consideration a promisor assents to as the price of his promise is legally sufficient consideration." *Judwin Props., Inc. v. United States Fire Ins.*, 973 F.2d 432, 435 (5th Cir. 1992) (citation omitted).[2] A Northern District of California case with similar facts—though not binding authority on this Court—is persuasive to this analysis. *See Tompkins v. 23andMe, Inc.*, Case Nos. 5:13-CV-05682-LHK, et al., 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014). There, the court found adequate consideration for post-purchase acceptance of terms of service because "in exchange for clicking 'I ACCEPT,' customers received the health and ancestry results from their DNA samples." *Id.* Here, in exchange for clicking "Agree," Defendant received, among other

---

[2] Even if Defendant were to argue that Virginia law should apply, "Virginia has long followed the 'peppercorn' theory of consideration, under which even a peppercorn suffices as consideration." *Sfreddo v. Sfreddo*, 720 S.E.2d 145, 153 (Va. Ct. App. 2012). Thus, Virginia law requires no more consideration than does Texas law.

7

things, the right to view the videos that make up the NS Program. The Court finds that this right constitutes adequate consideration.

### ii. *Enforceability of Forum Selection Clause*

Having determined that the agreement containing the forum selection clause is valid, the Court turns to the enforceability of the forum selection clause. "Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases." *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008) (citation omitted). Under federal law, a party seeking to overcome the presumption of enforceability of a forum selection clause "must carry the heavy burden of demonstrating that enforcement of the forum-selection clause would be unreasonable under the circumstances." *Fleetwood Servs., LLC v. Complete Bus. Sols. Grp., Inc.*, Civ. A. No. 3:17-CV-2272-G, 2018 WL 501184, at *3 (N.D. Tex. Jan. 22, 2018) (citing *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997)). Enforcement is unreasonable where:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines*, 499 U.S. at 595).

Defendant addresses only the second option—inconvenience or unfairness of the selected forum—in her briefing. For the reasons discussed below, the Court finds that enforcement of the forum selection clause would not deprive Defendant of her day in court. *See infra* § II.B. As to the first option, the Court finds no fraud or overreaching. The third option is irrelevant, as Plaintiffs are the parties seeking enforcement of the forum selection clause. As to the fourth option, the

8

Court finds that enforcement of the forum selection clause would not contravene a strong public policy of the forum state. Therefore, the forum selection clause is enforceable, and the Court has personal jurisdiction over Defendant.

### B. *Venue*

#### i. *Venue is Proper*

Defendant argues that venue is improper in the Northern District of Texas pursuant to 28 U.S.C. § 1400(a). That section provides: "Civil actions . . . relating to copyrights . . . may be instituted in the district in which the defendant or [her] agent resides or may be found." 28 U.S.C. § 1400(a). "[A] defendant 'may be found' in any district in which [she] is subject to personal jurisdiction." *TracFone Wireless, Inc. v. Carson*, Civ. A. No. 3:07-CV-1761-G, 2008 WL 4107584, at *8 (N.D. Tex. Aug. 28, 2008) (quoting *Gen. Design Sign Co. v. Am. Gen. Design, Inc.*, Civ. A. No. 3:02-CV-2298-H, 2003 WL 251931, at *2 (N.D. Tex. Jan. 31, 2003)). As discussed above, Defendant is subject to personal jurisdiction in the Northern District of Texas. *See supra* II.A. Venue is therefore appropriate in this district.[3]

#### ii. *Venue Transfer Analysis*

"For the convenience of the parties and witnesses" and "in the interest of justice," a court may transfer a case to any district in which the case could have been filed. 28 U.S.C. § 1404(a). While courts have "broad discretion" in determining whether a case should be transferred, courts in the Fifth Circuit consider certain private and public interest factors to guide the exercise of their discretion. *BlackBerry Ltd. v. Avaya Inc.*, Civ. A. No. 3:16-cv-02185-M, 2017 WL 4512835, at *1 (N.D. Tex. Oct. 10, 2017) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc)). The

---

[3] As Defendant admits, this Court "may . . . hear the state claims [at issue] through its supplemental jurisdiction." Mot. 8. Because venue is proper for the copyright infringement claim pursuant to 28 U.S.C. § 1400(a), venue is similarly proper for the remaining state claims.

9

private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*, 545 F.3d at 315 (citation omitted). The public interest factors include:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* These factors are not necessarily exhaustive or exclusive, and the movant has the burden to show good cause for the transfer. *Blackberry*, 2017 WL 4512835, at *1-2 (citation omitted). "The burden on the movant is significant, and for a transfer to be granted, the transferee venue must be clearly more convenient than the venue chosen by the plaintiff." *Id.* (quoting *AT&T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, Civ. A. No. 3:08-CV-1637-M, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (internal quotation marks omitted).

The existence of an enforceable forum selection clause alters the transfer analysis. The forum selection clause states that "[a]ny dispute arising under this Agreement shall be resolved exclusively by the state and federal courts located in Dallas County, Texas." Resp. 1 (quoting Pls.' App in Support of Resp. 21). "[U]nder federal law the use of the word 'exclusive' is sufficient additional language indicating the parties' intent to make venue exclusive." *Link Am. Corp. v. Infovista Corp.*, No. 3:16-CV-542-M, 2016 WL 3406114, at *2 (N.D. Tex. June 21, 2016) (citations omitted). When parties agree to a mandatory forum selection clause such as the one at issue in this case, "they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine Constr. Co. v. U.S. Dist.*

10

*Court for the W. Dist. of Tex.*, 571 U.S. 49, 64 (2013). Therefore, the Court need only consider the public interest factors.

Here, the public concerns weigh in favor of denying the motion to transfer. First, Texas has a substantial interest in protecting its citizens from infringement. *Veracity Research Co. v. Bateman*, Civ. A. No. 3:07-CV-2158-L, 2008 WL 2951910, at *6 (N.D. Tex. Aug. 1, 2008) ("Texas has an interest in resolving disputes that injure Texas citizens or corporations."). Plaintiffs are Texas entities. Compl. ¶¶ 7-8. Accordingly, this favors denial of the motion to transfer. Second, all matters pleaded involve issues of Texas and federal law. *See generally* Compl. There are no issues of Virginia law. *See id.* This also weighs against transfer. Moreover, there do not appear to be conflict-of-law issues in this case, as the Agreement has a Texas choice of law provision. *See* Def. App. 21 ("This Agreement shall be construed in accordance with the laws of the State of Texas, without regard to any conflict of law provisions."). Finally, there is no suggestion that this case presents problems regarding the application of foreign laws.[4]

Based on this analysis—and the presence of the mandatory forum-selection clause—the Court finds that Defendant has not carried its burden to show that the Eastern District of Virginia is the clearly more convenient forum. *See Blackberry*, 2017 WL 4512835, at *1-2 (citation omitted).

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss or, in the Alternative, Transfer Venue.

---

[4] As the Court finds that most of the public interest factors weigh against transfer of this case, the Court does not address Plaintiffs' argument that this litigation would be "speedier" in the Eastern District of Virginia. *See* Reply to Mot. to Dismiss 10.

**SO ORDERED.**

SIGNED September 11, 2019.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**